UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CASSANDRA HENDRICKS,

                              Plaintiff,

                                                              DECISION AND ORDER

                                                              03-CV-6526L

                    v.

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

## INTRODUCTION

Plaintiff Cassandra Hendricks ("plaintiff"), proceeding *pro se*, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) to review the final determination of the Commissioner of Social Security ("the Commissioner") that she is not entitled to Disability Insurance or Supplemental Security Income benefits under Titles II and XVI of the Social Security Act ("the Act").

The Commissioner now moves for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c). (Dkt. #9). Plaintiff opposes the motion and argues that there is substantial evidence in the record to show that she is disabled under the Act. As set forth below, the Commissioner's motion is denied, and this case is remanded for further administrative proceedings consistent with this Decision and Order.

## PROCEDURAL HISTORY

Plaintiff was born on June 7, 1958.  She completed approximately two years of college.  She has past relevant work as a security officer, information clerk, and receptionist.  (T. 57, 77, 156, 424-25).  On May 10, 2001, plaintiff applied for benefits alleging disability due to systemic lupus erythematosus, diabetes mellitus, and high blood pressure, with an onset date of April 21, 2000. (T. 45, 56).[1]  Her application was denied. (T. 23-28).  She appealed, and a hearing was held before Administrative Law Judge ("ALJ") Robert T. Harvey on December 4, 2002, at which plaintiff appeared with an attorney and testified. (T. 419-53).  On March 20, 2003, the ALJ issued a decision finding that plaintiff was not disabled because she was able to perform all of her past relevant work. (T. 18-22).  The Appeals Council denied plaintiff's request for review on August 29, 2003. (T. 5-7).  This action followed.

## DISCUSSION

### I.    Definition of Disability

Under the Social Security Act ("the Act"), a person is considered disabled when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  A physical or mental impairment (or combination of impairments) is disabling if it is of such severity that a person "is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* at §§ 423(d)(2)(A);

---

[1] "T. __" refers to the page of the administrative transcript filed by the Commissioner.

1382c(a)(3)(B).  To determine whether a person is disabled within the meaning of the Act, the ALJ

proceeds through a five-step sequential evaluation.  *Bowen v. City of New York*, 476 U.S. 467,

470-71 (1986); *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir.1999).[2]

## II.     The ALJ's Decision

Applying the five-step disability evaluation, the ALJ first found that plaintiff had not

engaged in substantial gainful activity since her alleged onset date.  At step two, the ALJ found that

plaintiff had impairments (including lupus, hypertension, and diabetes) that were severe within the

meaning of the regulations.  At step three, the ALJ concluded that none of these impairments, either

alone or in combination, met or medically equaled a listed impairment found at 20 C.F.R. Part 404,

Subpart P, Appendix 1.  The ALJ determined at step four that plaintiff was not disabled because she

retained the residual functional capacity to perform her past relevant work.  (T. 27).

## III.    Standard of Review

---

[2]      The Second Circuit has described the five-step process as follows:

First, the Commissioner considers whether the claimant is currently engaged in
substantial gainful activity. Where the claimant is not, the Commissioner next considers
whether the claimant has a "severe impairment" that significantly limits her physical or
mental ability to do basic work activities.  If the claimant suffers such an impairment, the
third inquiry is whether, based solely on medical evidence, the claimant has an
impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1.  If the claimant has a listed
impairment, the Commissioner will consider the claimant disabled without considering
vocational factors such as age, education, and work experience; the Commissioner
presumes that a claimant who is afflicted with a listed impairment is unable to perform
substantial gainful activity.  Assuming the claimant does not have a listed impairment,
the fourth inquiry is whether, despite the claimant's severe impairment, she has the
residual functional capacity to perform her past work.  Finally, if the claimant is unable
to perform her past work, the burden then shifts to the Commissioner to determine
whether there is other work which the claimant could perform.

*Tejada*, 167 F.3d at 774.

The Commissioner's decision that plaintiff is not disabled must be affirmed if it is supported by substantial evidence.  42 U.S.C. § 405(g); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir.2002); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir.1991).  Substantial evidence is defined as "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  Thus, "[i]t is not the function of a reviewing court to decide *de novo* whether a claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999).

Such a deferential standard, however, is not applied to the Commissioner's conclusions of law.  *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir.1984); *accord Tejada*, 167 F.3d at 773.  This Court must independently determine if the Commissioner's decision applied the correct legal standards in determining that the plaintiff was not disabled.  "Failure to apply the correct legal standards is grounds for reversal."  *Townley*, 748 F.2d at 112.  Therefore, this Court is to first review the legal standards applied, and then, if the standards were correctly applied, consider the substantiality of the evidence.  *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir.1987).

Here, the Commissioner argues that substantial evidence in the record exists to support the ALJ's determination that plaintiff is not disabled.  I disagree.  The Commissioner's decision is reversed because it is based on legal error and is not supported by substantial evidence.

## IV.   Legal Errors

### A.   *Failure to Evaluate Whether SLE met Listing-Level Severity*

Plaintiff alleged that she is disabled because she meets the requirements for Listing 14.02 for Systemic Lupus Erythematosus ("SLE").  At step three, however, the ALJ failed to discuss any

of the criteria for Listing 14.02 or address the opinions of plaintiff's treating physicians that pertain

to the Listing.  Instead, the ALJ stated in conclusory fashion that plaintiff's impairments, while

severe, did not meet the clinical criteria of any impairment contained in the Listings. (T. 19).

Plaintiff's medical records, however, are replete with references to the diagnosis of SLE.

Plaintiff's treating physician, Dr. Lisa Harris, opined in March of 2000 that plaintiff was developing

"systemic lupus."  In December 2002, Dr. Harris opined that plaintiff met the diagnostic criteria for

SLE, as identified by the American College of Rheumatolgy.[3]  (T. 329-35).  Dr. Harris found that

plaintiff had seven out of eleven signs or symptoms necessary for a finding of SLE, and she

documented the clinical findings, laboratory test results (including blood work) used as a basis for

each finding.   The medical records indicate that plaintiff's SLE includes significant joint

involvement and skin involvement.[4]

There is conflicting evidence in the record, however, regarding whether plaintiff meets the

criteria for Listing 14.02.  Plaintiff's rheumatologist, Dr. Roger M. Cass, to whom the ALJ gave

"great weight," opined on October 24, 2002, that plaintiff had "probable SLE."  (T. 309).  Less than

one week later, however, Dr. Cass found that plaintiff did not have the necessary signs or symptoms

at that time to fulfill the diagnostic criteria for SLE. (T. 380-86).

---

[3]  The Listing for SLE notes that "[g]enerally the medical evidence will show that patients with this disease will fulfill The 1982 Revised Criteria for the Classification of [SLE] of the American College of Rheumatology." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, at 14.00B1.

[4]  This is significant because the Listing 14.02(A) for SLE requires that there be sufficient documented "involvement" of one organ or body system, including cardiovascular, renal, skin, and joints. In addition, under Listing 14.02(B), plaintiff may meet the Listing if she has "[l]esser involvement of two or more organs/body systems listed in paragraph A, with significant, documented, constitutional symptoms and signs of severe fatigue, fever, malaise, and weight loss.  At least one of the organs/body systems must be involved to at least a moderate level of severity."

The ALJ was required to evaluate all of the evidence in the record, and he may have done so here. Unfortunately, however, because the ALJ failed to discuss the basis for finding that plaintiff's impairments did not meet or equal a Listing, I cannot determine whether his conclusion at step three is supported by substantial evidence. *See Torres v. Barnhart*, No. CV-01-6051, 2005 WL 147412, at *7 (E.D.N.Y. Jan. 24, 2005) ("[T]he ALJ . . . failed to set forth a crucial issue 'with sufficient specificity to enable [this Court] to decide whether the determination is supported by substantial evidence.'") (quoting *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir.1984)); *see also Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998)("'Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.'")(quoting *Johnson*, 817 F.2d at 986).

Whether plaintiff has an impairment or combination of impairments that meets or equals a Listing is a determination reserved for the Commissioner. Treating physician opinions regarding the criteria for a Listing are not entitled to controlling weight. *See* 20 C.F.R. §§ 404.1527(e)(2); 416.927(e)(2). Nevertheless, the ALJ must still consider those opinions when evaluating disability. An ALJ cannot dismiss without explanation a medical opinion that clearly supports a finding of disability at step three.

The Court's jurisdiction under 42 U.S.C. § 405(g) is limited. I cannot make an independent determination as to whether the record supports a finding that plaintiff meets or equals Listing 14.02. *See Melville*, 198 F.3d at 52. Instead, on remand, the ALJ needs to articulate his basis for finding that plaintiff does not meet (or equal) the criteria for Listing 14.02.

B.  *Failure to Give Good Reasons For Not According Dr. Harris's Opinions Weight*

It has long been recognized that the opinion of a treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence. *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir.2003); *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir.1999).   In determining what weight to give a treating physician's opinion, the Commissioner must consider: (1) the length, nature and extent of the treatment relationship; (2) the frequency of examination; (3) the evidence presented to support the treating physician's opinion; (4) whether the opinion is consistent with the record as whole; and (5) whether the opinion is offered by a specialist. 20 C.F.R. §§ 404.1527(d); 416.927(d). When controlling weight is not given to a treating physician's medical opinion, the ALJ must explain his reasons for the weight he does assign to that opinion. *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir.2000); *see also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir.1999) ("Failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.") (internal quotations omitted).

In making his determination that plaintiff was not disabled, the ALJ "reject[ed]" the opinions of Dr. Harris, plaintiff's long-standing treating physician.  The ALJ did so on the basis that Dr. Harris's opinions were "not based upon objective medical evidence." (T. 20).  The ALJ found that "more significant weight" should be given to the opinions of plaintiff's rheumatologist, Dr. Cass, because they were consistent with "other substantial evidence in the case" and were "supported by medically acceptable clinical or diagnostic data."  The ALJ also held that Dr. Cass's opinions were entitled to "great weight" given "his personal, long-term familiarity with the claimant's medical condition and a good opportunity to know and observe her as an individual." (T. 20).

There is no dispute that both Dr. Harris and Dr. Cass were "treating" physicians.  It is also clear that each gave a somewhat different opinion regarding plaintiff's SLE and the functional limitations plaintiff has as a result of her impairments.  The ALJ has the authority to weigh these opinions, resolve any conflicts, and determine how much weight to accord any particular opinion.  Here, however, the ALJ misapplied the Commissioner's regulations.  Although the ALJ explained what weight he gave to the opinions of Drs. Harris and Cass, the reasons he provided for according Dr. Cass's opinions more weight than those of Dr. Harris were not "good reasons," nor were they supported by substantial evidence. *See* 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").

A careful examination of the record demonstrates that the ALJ gave only lip service to the treating physician's rule.  First, the record is clear that Dr. Harris, not Dr. Cass, has the "personal, long-term familiarity with the claimant's medical condition" and has had "a good opportunity to know and observe her as an individual." Dr. Harris is plaintiff's primary care physician and has treated her consistently since 1998.  (T. 201).  Dr. Harris has a long-standing treatment relationship with plaintiff, and has examined her as often as twice a month for several years.  Dr. Cass, on the other hand, is plaintiff's consulting rheumatologist.  According to Dr. Cass, he sees plaintiff for approximately 20 minutes at a time, twice a year.  Dr. Harris, in fact, referred plaintiff to Dr. Cass for consultation regarding her SLE.  The record shows that Dr. Cass saw plaintiff only five times over a two-year period between 2001 and 2002. (T. 380).

 Second, contrary to the ALJ's conclusions, Dr. Harris's opinions are well supported by objective medical and clinical findings.  In her opinion regarding the medical signs and symptoms

- 8 -

of plaintiff's SLE, Dr. Harris identified the objective medical findings, including laboratory reports and test results, that provided a basis for her opinion. (T. 329-30). The same is true for her analysis of plaintiff's residual functional capacity ("RFC"), to which she attached the supporting clinical reports, test results and findings. (T.390-410). These are the same laboratory reports and test results that provide the foundation for Dr. Cass's opinions. Yet, the ALJ found that Dr. Cass's opinions were supported by more sufficient objective medical evidence. The record, however, does not support that conclusion.

Third, Dr. Cass's opinions are no more consistent "with the record as a whole" than the opinions of Dr. Harris. Notably, the ALJ does not cite to any specific evidence in the record with which Dr. Cass's opinions are allegedly "more" consistent. Instead, he states summarily that "more significant weight should be given to the medical opinion of Dr. Cass (a treating physician) since that opinion is consistent with the other substantial medical evidence in the case . . . ." (T. 20). In fact, the only other "substantial medical evidence" in the case record are the medical records and clinical findings of Dr. Harris.

Furthermore, Dr. Cass's opinions are, at times, internally inconsistent and he did not always provide a complete opinion about plaintiff's impairments and limitations. For instance, Dr. Cass stated in one assessment that he could not "provide a medical opinion regarding [plaintiff's] ability to do work-related activities." (T. 244). On another occasion, Dr. Cass refused to complete that portion of the questionnaire sent to him by the ALJ regarding plaintiff's work-related activities. This was done without explanation. (T. 383-86). Finally, when asked what "medical/clinical findings" supported the one RFC assessment Dr. Cass did complete, he wrote only the word "history." (T. 311). Despite Dr. Cass's failure to cite to any specific medical or clinical findings

upon which he based his RFC assessment, the ALJ found that it was well supported and entitled to "more significant weight." (T. 20).

Finally, even if more weight should have been accorded to the opinions of Dr. Cass than to those of Dr. Harris, the ALJ erred by not considering Dr. Harris's opinions at all.  In his decision, the ALJ states that he "rejects" Dr. Harris's opinion concerning the claimant's RFC.  It appears, based on this language and the ALJ's RFC finding (discussed *infra*), that the ALJ may not have given *any* weight to Dr. Harris's opinions, although that is not entirely clear from his decision.  Even when controlling weight is not accorded a treating physician's opinion, the ALJ still must describe what weight he gave to that opinion.  He did not do so here and that was error.  *See Schupp v. Barnhart*, No. Civ. 3:02CV103, 2004 WL 1660579 (D.Conn. Mar. 12, 2004).  Further, "[a] finding that a treating source's medical opinion is not entitled to controlling weight *does not mean that the opinion is rejected*. It may still be entitled to deference and be adopted by the adjudicator."  Social Security Ruling 96-2p, 1996 WL 374188 (S.S.A.) (emphasis added).  The ALJ's use of the word "rejects" suggests that he misapplied the law in this regard.

Based on this record, there is not substantial evidence to support the wholesale rejection of the opinions of plaintiff's long-standing, primary treating physician.  That is particularly true here, in light of the absence of significantly contradictory substantial evidence elsewhere in the record. As discussed above, the opinions of Dr. Cass do not constitute "other substantial evidence" to justify discounting entirely Dr. Harris's opinions.  "[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion," nor can he "set his own expertise against that of a physician who [submitted an opinion to or] testified before him." *Balsamo v. Chater*, 142 F.3d 75,

81 (2d Cir.1998) (citing *McBrayer v. Sec. of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir.1983)).

The ALJ's determination at step four regarding plaintiff's RFC is based on the legal errors set forth above, and cannot be upheld.  *See* 20 C.F.R. §§ 404.1545; 416.945.  The ALJ concluded that plaintiff had the RFC to lift/carry 20 lbs. occasionally and 10 lbs. frequently, sit 2 hours and stand or walk 6 hours in an 8-hour workday.  The ALJ also found that plaintiff had certain environmental, postural, and non-exertional limitations.[5]   Thus, the ALJ concluded that plaintiff could perform "light" work, with certain limitations noted.

Dr. Harris's opinions regarding plaintiff ability to perform work-related activities (T. 331-35, 394-97) are inconsistent with this determination.  Dr. Harris opined that plaintiff could lift less than 10 lbs. occasionally, stand and walk less than 2 hours in an 8-hour day, and she had to change positions frequently.  On remand, the ALJ needs to reconsider the opinions of Dr. Harris, as noted above, and make a new RFC determination.

C.      *Past Relevant Work*

The ALJ's determination that plaintiff retained the RFC to perform her past relevant work is also not supported by substantial evidence.  The ALJ concluded that plaintiff's past relevant work, as she actually performed it, was consistent with his RFC finding, set forth above.

In her duties as a security officer/receptionist for Kodak, plaintiff stated that she sat, stood, and walked for up to 8 hours in a given workday, depending on job duties that particular day. (T.

---

[5]  The ALJ found that plaintiff could not work in areas with unprotected heights, around heavy, moving or dangerous machinery or climb ropes, ladders or scaffolds. She also had occasional limitations in the ability to bend, stoop, climb, squat, kneel, balance, crawl and push or pull with her upper extremities.  Further, she could not work in areas where she would be exposed to cold, heat or dampness. (T.21).

57, 78).   The ALJ concluded, however, that plaintiff could stand or walk only 6 hours in an 8-hour workday.   Furthermore, at the hearing, the ALJ asked almost no questions regarding the manner in which plaintiff performed this job.   (T. 434-35).   Therefore, the only evidence in the record regarding how plaintiff actually performed this job comes from the questionnaires she completed as part of her application for benefits, and it is inconsistent with the ALJ's RFC analysis.

Likewise, as for her past work as a part-time information desk receptionist, plaintiff sat for 3.5 hours of the 4-hour part-time workday. (T. 79).   This exceeds the ALJ's RFC determination that, at most, plaintiff could sit only 2 hours in an 8-hour workday.   Finally, it is unclear whether plaintiff's past relevant work is consistent with the ALJ's RFC findings regarding plaintiff's numerous postural, environmental, and non-exertional limitations.

## V.    Remand for Further Administrative Proceedings

For all these reasons, the Commissioner's decision must be reversed and remanded for further administrative proceedings consistent with this Decision. Regrettably, this will cause further delay in a case that already has been delayed due to an oversight by the Commissioner in assembling the transcript and filing her answer.   Nevertheless, the Court is constrained, and must remand the case.   "'Where there are gaps in the administrative record or the ALJ has applied an improper legal standard,'" courts remand cases to the Commissioner for further development of the evidence. *See Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir.1996)(quoting *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir.1980)).

On remand, the ALJ should set forth his basis for finding that plaintiff does not meet or equal Listing 14.02 for SLE.   He also should reconsider the opinions of plaintiff's treating physicians, Drs. Harris and Cass, and set forth in detail how much weight to give them.   He should support his

conclusion with good reasons that are supported by the record.  Finally, should the ALJ determine

that plaintiff can perform her past relevant work, the record regarding the manner in which plaintiff

actually performed that work must coincide with the ALJ's RFC findings.  In light of the numerous

non-exertional limitations, it may be wise to obtain the testimony of a vocational expert at steps four

and five.

## CONCLUSION

The Commissioner's motion for judgment on the pleadings (Dkt. #9) is DENIED.  The

action is remanded to the Commissioner for further administrative proceedings consistent with this

Decision and Order.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge


Dated: Rochester, New York
        September 19, 2006.